Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 368 | **DATE** | 5/17/2001 |
| **CASE TITLE** | General Auto Service Station, et al vs. The City of Chicago, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss (Doc. 12-1) is granted. Case is dismissed without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 21 2001 | |
| | Notified counsel by telephone. | | date docketed | 37 |
| | Docketing to mail notices. | | CM | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/17/2001 | |
| | | 01 MAY 18 PM 4: 59 | date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
MAY 2 1 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENERAL AUTO SERVICE STATION, an Illinois corporation, F.A.Y. PROPERTIES, INC., an Illinois corporation, and COSMOPOLITAN BANK AND TRUST, SUCCESSOR TO THE COSMOPOLITAN NATIONAL BANK OF CHICAGO, not individually but as trustee under trust agreement dated December 21, 1984 and known as trust # 27340,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF CHICAGO, a municipal corporation, and LAMAR ADVERTISING COMPANY, a Delaware corporation, of itself and d/b/a Lamar Whiteco Outdoor Corporation,<br><br>Defendants. | No. 00 C 368<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

This case involves a dispute concerning a sign painted on the wall of a Chicago building. The sign has existed in its current location, at or near its current size, for many years. (Complaint ¶¶12, 13.) Whiteco Industries held the lease on that wall surface during the 1990's, and now Plaintiffs, the holders of a beneficial interest in the property, bring this suit challenging the City's's refusal to grant a permit for the sign. (*Id.* ¶¶6-8, 21-22.)[1] At the time

---

[1]   The original owner of the property, Bernard Heerey, died in February of 1999, leaving behind two Illinois corporations, which were wholly owned by his estate: (1) General Auto Service Station, which became the beneficiary of a land trust holding legal title to the Property; and (2) F.A.Y. Properties, Inc. ("F.A.Y."), which acts as the agent for General Auto
(continued...)

3⁷

the sign was erected and then illuminated in 1962, no permits were required for it because it was located 75 feet from any residential area. In 1990, however, the City of Chicago amended its zoning ordinance to require that such signs be 250 feet, rather than only 75 feet, from a residential area, rendering the sign in violation of the new ordinance. (*Id.* ¶¶ 23, 26, 29.) In December 1994, the City got around to enforcing the 1990 amendment to its zoning ordinance, and issued a notice that the sign violated that ordinance. (*Id.* ¶ 27, Exhibit A.) Upon receipt of this notice, Whiteco applied for a sign permit.[2] The Zoning Administrator had approved of the sign as a "legal non-conforming use," the first step to receiving a permit. Nevertheless, for reasons completely unexplained in this record, the City failed to process this 1995 application for a sign permit and, therefore, never issued a sign permit to Whiteco for the current sign. (*Id.* ¶¶ 32, 34.)[3]

Apparently nothing more happened until August 1997, when the City again issued a

---

[1](...continued)
Service Station. (Complaint ¶¶ 6-8.) Later that same year, in August of 1999, F.A.Y. leased the wall space to Chancellor Media Corporation, which had purchased Whiteco after 1997. (*Id.* ¶ 24.) A month later, Lamar Advertising Company purchased Chancellor and assumed that lease. (*Id.*) Lamar is the current lessee of the wall space. (*Id.*)

[2] So far as this court can understand, Whiteco was at least equitably entitled to such a permit; signs that were erected pursuant to a lawful permit were "grandfathered in," but Whiteco's sign was legally erected at a time when no permit was available. Although the City now argues that sign owners who had a "pre-existing permit" for their signs may fairly be distinguished from those who do not, the City offers no rationale for excluding sign owners whose signs were erected prior to the time any permit was required.

[3] The designation of "legal non-conforming use" would have allowed the sign to remain as if in compliance with the Code despite the fact that it did not conform with the current zoning code, because at the time the use came into existence it conformed with the then existing code. (*Id.* ¶ 33.)

notice of violation. (*Id.* ¶ 35, Exhibit C.) In September 1997, a City hearing officer determined that Whiteco's sign violated the ordinance. (*Id.* ¶ 38, Exhibit D.) Seven months later, Whiteco again applied for a sign permit and also filed an application for zoning certification. (*Id.* ¶ 39.) This time, the Zoning Administrator denied that request on April 21, 1998, and the Zoning Board of Appeals ("ZBA") affirmed the determination on September 14, 1998. (*Id.* ¶¶ 40, 42.) The following day, an administrative law officer from the Department of Administrative Hearings assessed a fine of $250.00 and ordered Whiteco to obtain a permit or remove the sign within 90 days. (*Id.* ¶ 45.)

Whiteco filed a complaint seeking administrative review of the ZBA decision with the Circuit Court of Cook County on October 19, 1998. In its complaint, Whiteco alleged, *inter alia*, that the Zoning Ordinance as applied to the sign violated the Illinois Constitution because it had no reasonable relationship to public health, welfare, or safety. Whiteco alleged, in addition, that by not processing the 1994 Application through the City Council, the City denied Whiteco of due process and equal protection of the law. (*Id.* ¶¶ 23(a) &(b), 43, Ex. 1, Defendant City of Chicago's Motion to Dismiss, Administrative Review Complaint.)

More than a year later, on January 19, 2000, Plaintiffs, owners of the sign, filed this complaint in federal court. In their complaint, Plaintiffs allege: (1) that the City violated Plaintiffs' procedural due process rights when it failed to process the 1995 sign permit; (2) that the Chicago Zoning Ordinance is unconstitutional as applied to Plaintiffs' property because it exceeds the police powers of the City of Chicago by not promoting the public health, safety, morals or general welfare of the City; and (3) that the Chicago Zoning Ordinance as applied

3

to the property violates Plaintiffs' right to freedom of speech. While this case was pending, the Circuit Court of Cook County issued an opinion in Whiteco's case, affirming the finding of the ZBA. (*See Whiteco Outdoor Advertising v. City of Chicago Zoning Board of Appeals*, 98 CH 14280.) That decision is currently on appeal in the state courts.

## DISCUSSION

Defendants have moved to dismiss the complaint both for failing to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. Under either rule, all well-pleaded facts are taken as true and all reasonable inferences are drawn in favor of the plaintiff. *American Soc. of Consultant Pharmacists v. Patla*, No. 00 C 7821, 2001 WL 197847, at *1 (N.D. Ill. Fed. 27, 2001) (citing *Mallett v. Wisconsin Div. of Voc. Rehab.*, 130 F.3d 1245, 1248 (7th Cir.1997) (Rule 12(b)(6)); *Komorowski v. Townline Mini-Mart & Restaurant*, 162 F.3d 962, 964 (7th Cir.1998) (per curiam); (Rule 12(b)(1)). The purpose of a motion to dismiss is to test the sufficiency of the pleading to state a claim, in the case of Rule 12(b)(6), *In re HealthCare Compare Corp. Securities Litigation*, 75 F.3d 276, 279 (7th Cir.1996), or to test subject matter jurisdiction, in the case of Rule 12(b)(1), *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir.1999)--not to test the merits of the suit. In addition, the court may look "beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."

4

*Bastien v. AT & T Wireless Servs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000).

### A.     Abstention Doctrines

In this case, because of the pending state court action between the City and Whiteco, Defendant contends that Plaintiffs' action is barred by the *Rooker-Feldman* doctrine or, alternatively, by the doctrine of *res judicata*. If it is not barred by one of these doctrines, Defendant argues, then the court should abstain from deciding it under *Younger*. Plaintiffs dispute the application of these doctrines.

Under Illinois law, *res judicata* bars a later suit between parties involving the same cause of action and includes what was actually decided in the earlier action, as well as those matters that could have been decided in that suit. *4901 Corp. v. Town of Cicero*, 220 F. 3d 522, 529 (7th Cir. 2000). The doctrine would bar a case in this court asserting federal claims, even if such claims were not presented in an earlier state court proceeding. *Gosnell v. City of Troy*, 59 F.3d 654, 646 (7th Cir. 1995) (if unsuccessful parties "withheld their federal arguments from the state tribunals, then it is too late to assert them now under the doctrine of claim preclusion (*res judicata*).")

The *Rooker-Feldman* doctrine precludes lower federal courts from exercising jurisdiction over claims that would require them to review a final judgment of a state court. *Manley v. City of Chicago*, 236 F.3d 392, 396 (7th Cir. 2001); (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). Federal courts must apply the doctrine even where the claims raised in federal court were not raised in state court, but were nonetheless "inextricably intertwined" with the state court

judgment. *Manley*, 236 F.3d at 396 (citing *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir. 1993)); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 1533 (1987). The key inquiry is "whether 'the district court is in essence being called upon to review the state-court decision.'" *Id.* (citing *Ritter*, 992 F.2d at 754 (quoting *Feldman*, 460 U.S. at 483-84 n. 16.)

Determining whether *res judicata* or *Rooker-Feldman* applies can be difficult; as the Seventh Circuit has pointed out, *res judicata* normally bars a case brought by a plaintiff in federal court who was also a plaintiff in state court. *See Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998); *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996). *Rooker-Feldman* is more often applicable where the federal court plaintiff was a defendant in a state court proceeding. *Id.* Although Whiteco is the plaintiff in state court, the state case can fairly be understood as an appeal by Whiteco from an action for enforcement of the zoning ordinance, in which Whiteco is the party charged with a violation, effectively a defendant. Those circumstances suggest the *Rooker-Feldman* doctrine applies here, but because the state appeal is still pending, the court does not understand the case in this court as a request for review of the state court's decision.

Defendant has made effective arguments for the application of each of these doctrines, but the court believes the most directly applicable doctrine is *Younger*. Under the *Younger* abstention doctrine, a federal action is barred if it is filed during the pendency of state proceedings, those proceedings involve important governmental interests, and plaintiff has an adequate opportunity to assert his federal claims in that forum. *Nelson v. Murphy*, 44 F.3d 497, 501 (7th Cir. 1995); *Trust and Investment Advisers, Inc. v. Hogsett*, 43 F.3d 290, 295 (7th Cir.

1994). As this court understands the current procedural status, Whiteco is pressing its state court appeal from the zoning board's refusal to grant Whiteco a sign permit.

Plaintiffs argue that they are not in privity with Whiteco, but the court is not persuaded. A non-party is in privity with another party when that other party adequately represents the nonparty's legal interest in the first proceeding. *In re L & S Indus.*, 989 F.2d 929, 934 (7th Cir. 1993); *In re Haskell*, No. 96 B 14602, 1998 WL 809520, at *5 (N.D. Ill. Nov. 19, 1998.) It is the identity of interests that controls in determining privity. *See, e.g., In re Haskell*, 1998 WL 809520, at *5 (in determining privity, court considers whether party's legal interests in the proceeding were congruent to the non-party's legal interests). Further, Illinois courts have held that a privity relationship exists between a lessor and a lessee because a lease requires privity. *Furgatch v. Butler*, 188 Ill. App.3d 1060, 1066, 545 N.E.2d 140, 143 (1st Dist. 1989)("both privity of contract and privity of estate exist between a lessor and a lessee"). The privity concept contemplates a successive or mutual relationship to the same property rights considered by the prior litigation. *Id.*

For example, in *Furgatch*, a property owner filed suit seeking a declaration that a city zoning ordinance was unconstitutionally applied to his property and sought to have the defendants rezone the premises. *Id.* at 1062, 545 N.E.2d at 141. The court held that the property owner's action was barred by *res judicata* because the owner's lessee had already filed a suit to challenge the city's zoning ordinance. *Id.* at 1065, 545 N.E.2d at 144. Though the lessee did not raise any constitutional issues when she appealed the denial of rezoning to the circuit court of Cook County, the Illinois Appellate Court found that she could have

7

amended her pleadings and "challenged the constitutionality of the zoning ordinance as it applied to the subject property." *Id.* Because she did not, and because the court found that the owner and lessee were clearly in privity in this case, the owner was barred by *res judicata* from bringing these claims. *Id.* at 1067, 545 N.E.2d at 144.

In this case, Whiteco, who at the time of the Notice of Violation leased the wall space from Heerey and was the sole occupant of that space, had the exact same interest as Plaintiffs in obtaining a zoning permit for its lighted sign. As Defendant notes, it was Whiteco, not the owners of the property, who took each of the necessary steps to obtain the permit, including applying on two separate occasions for the permits, appearing in the proceedings before the Zoning Administrator, and appearing in a proceeding before the ZBA. Though Plaintiffs make much of the fact that they did move to intervene in the state court proceeding and were denied, significantly, Plaintiffs' petition to intervene was denied because it did not attempt to intervene until the matter reached state court, allowing Whiteco to pursue the application until this time. In denying Plaintiffs' motion to intervene in the state court decision, Judge Thomas P. Durkin reasoned that he could not consider Plaintiffs' claims because the administrative review was the only matter before him and Plaintiffs were not a party to the administrative review. As he explained, "And you know when you should have intervened? Back at the level of the administrative hearing, not when it comes to the Appellate court." Plaintiffs' Response to the City of Chicago's Motion to Dismiss, Exhibit E, at 7.[4]

---

[4] At the time Plaintiffs filed this petition to intervene in state court, they themselves
(continued...)

8

Notably, although Plaintiffs insist their interests are inconsistent with Whiteco's, Plaintiffs to this day have not even filed an application for a sign permit, allowing Whiteco to apply for the permit in their stead. The fact that Whiteco did a poor job in pressing its case in state court, as Plaintiffs suggest, does not defeat a conclusion that Whiteco was in privity with Plaintiffs. Nor is it enough for Plaintiffs to argue that Whiteco did not raise its federal claim at the time because it could not. Judicial review of an administrative agency's action extends to all questions of law and fact presented by the entire record. *Bridgestone/Firestone v. Aldridge*, 179 Ill. 2d 141, 148 (1997); *Abrahamson v. Illinois Dep't of Pro. Reg.*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992); *Jones v. Illinois Edu. Labor Relations Bd.*, 272 Ill. App. 3d 612, 623, 650 N.E.2d 1092, 1100 (1st Dist. 1995). The rule that an administrative agency's findings of fact should not be disturbed unless they are against the manifest weight of the evidence does not apply where the question involved is one of law, such as the proper interpretation of a statute. In such a case, the Board's finding is not binding on the court. *DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund*, 156 Ill.2d 377, 380-81, 620 N.E.2d 1070, 1072 (1993). Thus, Whiteco was not precluded from raising these issues in state court. Indeed, Whiteco raised a procedural and substantive due process claim in its original state claim under the Illinois Constitution, demonstrating that it was possible to raise these claims at that time.

---

[4](...continued)
seemed to recognize their relationship to Whiteco as privies: counsel stated, "we have some concern that we as the lessor of the, of the sign that is the subject of this appeal will, there is case law in Illinois which suggests that we will be bound by or may well be bound by the decision" of the court in Whiteco's case. *Id.* at 7.

### B. Statute of Limitations and Failure to State a Claim

The court's resolution of this motion eliminates the need to address the merits of Plaintiffs' claims. Nevertheless, the court notes, first, its concern that at least certain counts of this claim are likely barred by the statute of limitations. Plaintiffs suggest that "it is the entire history of the Painted Sign" that must be considered here (Plaintiffs' Opposition Brief, at 15), but in this case the focus of Plaintiffs' procedural due process challenge is the action taken by the City in 1994 and 1995 in failing to process Whiteco's application after the Zoning Board Administrator labeled the sign a legal non-conforming use. The Supreme Court has directed that the proper statute of limitations for Section 1983 claims is the personal injury statute of limitations of the state in which the alleged injury arose. *Hoosier Bancorp of Indiana, Inc. v. Rasmussen*, 90 F.3d 180 (7th Cir. 1996) (citing *Wilson v. Garcia*, 417 U.S. 261, 275 (1985)). In Illinois, the applicable statute of limitations is two years for "actions for damages for an injury to the person." *Kalimara v. Illinois Department of Corrections*, 879 F.2d 276 (7th Cir. 1989) (reaffirming that the statute of limitations for §1983 claims is two years).

In September of 1994, Whiteco received the first notice that it was in violation of the Municipal Code and attempted to remedy that violation by applying for a permit. Though Whiteco did receive the Zoning Administrator's certification that the sign was a "legal non-conforming use," and Whiteco properly applied for a permit on January 31, 1995, the City nevertheless failed to issue Whiteco that permit. Arguably, even if Plaintiffs were not aware of this bureaucratic mix up at the time, they became aware of it, at the latest, in August of 1997, when Plaintiffs were issued another Notice of Violation for the current sign. Generally,

a limitations period begins when facts exist which authorize one party to maintain an action against another. *Bank of Ravenswood v. City of Chicago*, 307 Ill. App. 3d 161, 717 N.E.2d 478 (1st Dist. 1999). Thus, "a plaintiff's cause of action accrues at the time its interest is invaded; the mere fact that the extent of its damages is not immediately ascertainable does not postpone the accrual of a plaintiff's claim." *Id.* Because Plaintiffs' complaint challenges the City for not processing the first permit in 1995 and also challenges the second Notice of Violation, Defendant argues that Plaintiffs' state and federal law claims should be barred by the relevant statute of limitations, because all events occurred more than two years ago.

Plaintiffs argue, however, that there is a continuing violation which prevents the statute of limitations from tolling. Where a tort involves a continuing or repeated injury, the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease. *Hyon Waste Management Services, Inc. v. City of Chicago*, 214 Ill. App. 3d 757, 574 N.E.2d 129, 132 (3d Dist. 1991). In Illinois, however, a continuing violation is occasioned by continuing unlawful *acts and conduct*, not by continual *ill effects* from an initial violation. *Hyon Waste Management Services, Inc.*, 574 N.E.2d 129, 132 (3d Dist. 1991). Where there is "but one overt act from which subsequent damages may flow, it is held that the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Id.* at 133. Because Plaintiffs' procedural due process claim results from the City failing to process its sign permit in 1995, this claim should be barred by the state of limitations.

The court, notes, further, its doubt that Plaintiffs will be able to mount an effective

First Amendment challenge to the reasonable, content-neutral zoning restrictions at issue here (size of sign, distance from residential areas). *See, e.g. City of Erie v. Pap's A.M.*, 120 S. Ct. 1382, 1395-97 (2000) (setting out the four factor test to determine whether a content neutral government regulation violates the federal Constitution). Indeed, Plaintiffs' brief itself does not suggest that such restrictions cannot pass constitutional muster. Instead, Plaintiffs' First Amendment argument is nothing more than a restatement of its argument that the City's refusal to "grandfather" Plaintiffs' sign deprives it of due process.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Doc. No. 12-1) is granted.

ENTER:

Dated: May 17, 2001

REBECCA R. PALLMEYER
United States District Judge