# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 368 | **DATE** | 3/9/2004 |
| **CASE TITLE** | General Auto Service Station, et al. vs. The City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 3/23/04 at 9:00 A.M.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The City of Chicago's Motion to Dismiss (Docket No. 68-1) is granted in part and denied in part, and Lamar Advertising Company's Motion to Dismiss (Docket No. 73-1) is granted. Counts I, II, V, VI, and VII of the FAC are dismissed. Defendant Lamar is dismissed from this case without prejudice to a state court action on Plaintiffs' claims against Lamar.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 5 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 10 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 93 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/9/2004 | |
| | | | date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 1 0 2004

| | |
|---|---|
| GENERAL AUTO SERVICE STATION, an Illinois corporation, F.A.Y. PROPERTIES, INC., an Illinois corporation, and COSMOPOLITAN BANK AND TRUST, SUCCESSOR TO THE COSMOPOLITAN NATIONAL BANK OF CHICAGO, not individually but as trustee under agreement dated December 21, 1994 and known as trust # 27340,<br><br>Plaintiffs,<br><br>v.<br><br>The CITY OF CHICAGO, a municipal corporation, and LAMAR ADVERTISING COMPANY, a Delaware corporation, of itself and d/b/a Lamar Whiteco Outdoor Corporation,<br><br>Defendants. | No. 00 C 0368<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiffs General Auto Service Station ("General Auto"), F.A.Y. Properties, Inc., ("F.A.Y.") and Cosmopolitan Bank and Trust, Successor to the Cosmopolitan National Bank of Chicago, brought this suit against Defendants the City of Chicago (the "City") and Lamar Advertising Company ("Lamar") to resolve a dispute regarding a sign painted on an exterior wall of a building located at 1127-33 North State Street in Chicago, Illinois. The City determined that the sign, which has existed in its current location and near its current size for over 40 years, violates an amended zoning ordinance and must be removed. In this lawsuit, Plaintiffs assert that the ordinance is unconstitutional as applied to their property under the First Amendment free speech clause (Count I) and the Fourteenth Amendment due process clause (Counts II, III, and IV). Plaintiffs also allege that the City has effected an unlawful taking of their property (Count V) and seek a writ of



mandamus ordering the City to initiate an eminent domain proceeding pursuant to 735 ILCS 5/7-101 (Count VI). In Count VII, Plaintiffs charge Lamar with breach of contract. The City and Lamar have separately moved to dismiss all Counts of Plaintiffs' complaint. For the reasons set forth here, the City's motion is granted in part and denied in part, and Lamar's motion is granted.

## BACKGROUND

The facts of this case, including a complete description of the relationships between the various parties, have been fully presented in this court's May 21, 2001 Memorandum Opinion and Order, see *General Auto Service Station v. City of Chicago*, No. 00 C 368, 2001 WL 558148 (N.D. Ill. May 21, 2001), and in the Seventh Circuit's decision in *General Auto Service Station LLC v. City of Chicago*, 319 F.3d 902 (7th Cir. 2003). This opinion assumes the reader's familiarity with these earlier decisions and will summarize the relevant facts here only briefly.

General Auto owns the building at 1127-33 North State Street where the disputed sign is located. When the sign was first erected in 1962, no permits were required under the then existing zoning ordinance because it was positioned 75 feet from any residential area. (FAC ¶¶ 6, 16.)[1] In 1990, the City amended the zoning ordinance to require that such advertising signs be at least 250 feet from a residential area, rendering the sign in violation of the new ordinance. In September 1994, the City issued Whiteco Industries,[2] which held the lease on the wall space throughout the 1990's, a notice that the sign violated the amended ordinance. (*Id.* ¶¶ 23, 27, 29.) Whiteco applied for a permit, armed with a certification from the Zoning Administrator that the sign constituted a "legal non-conforming use" – i.e., it was in compliance with the Code despite the fact that it did not conform with the current zoning code, because it conformed with the code in force at the time the sign came into existence. (*Id.* ¶¶ 30-33.) For reasons that are not explained, the City did not

---

[1] Plaintiffs' First Amended Complaint is cited as "FAC ¶ ___."

[2] Defendant Lamar is the successor in interest to Whiteco and is the current lessee of the wall space where the sign is located.

2

process the application and nothing more happened until August 1997, when the City issued another notice of violation. (*Id.* ¶¶ 34, 35.) Whiteco again applied for a permit, but this time the Zoning Administrator denied the request on April 21, 1998. Whiteco appealed to the Zoning Board of Appeals ("ZBA"), but on September 14, 1998, the ZBA affirmed. (*Id.* ¶¶ 39-42.) On October 20, 1998, an administrative law officer assessed a $250 fine and ordered Whiteco to remove the sign within 90 days. (*Id.* ¶ 44.)

The day before it received that order, on October 19, 1998, Whiteco filed a complaint with the Circuit Court of Cook County seeking administrative review of the ZBA decision. Plaintiffs jointly moved for leave to intervene in that action but the Circuit Court denied their request. (*Id.* ¶ 43.) On March 2, 2000, the Circuit Court also denied Whiteco's claim for relief. That decision was affirmed on appeal. *Whiteco Outdoor Advertising v. City of Chicago Zoning Bd. of Appeals*, No. 98 CH 14280 (Cir. Ct. Cook County Mar. 2, 2000), *aff'd*, No. 1-00-1194 (Ill. App. 1st Dist. Sept. 17, 2001), *leave to appeal denied*, 198 Ill.2d 610, 766 N.E.2d 245 (2002). A few weeks before the Circuit Court issued its opinion, Plaintiffs initiated this lawsuit in federal court alleging substantive and procedural due process violations and a violation of their right to free speech. This court dismissed the complaint under the *Younger* abstention doctrine, *see General Auto Service Station*, 2001 WL 558148, at *2-4, but the Seventh Circuit reversed. *See General Auto Service Station*, 319 F.3d at 904-07.

On April 29, 2003, Plaintiffs filed a First Amended Complaint ("FAC") alleging that (1) the City's zoning ordinance is unconstitutional as applied to their property because it violates their right to freedom of speech (Count I); (2) the City violated their procedural due process rights by failing to process the first sign permit application in 1995 (Count II); (3) the City's zoning ordinance is unconstitutional as applied to their property because it exceeds the police powers of the City and denies due process of law (Count III); (4) the City's zoning ordinance has been unconstitutionally applied in a harsh, oppressive, and arbitrary manner in violation of their due process rights (Count

3

IV); (5) the City's zoning ordinance is unconstitutional as applied to their property because it constitutes an unlawful taking (Count V); and (6) the City should be ordered to compensate them under the Illinois state Eminent Domain statute, 735 ILCS 5/7-101 (Count VI). Plaintiffs also allege that Defendant Lamar breached its lease agreement to indemnify Plaintiffs for their reasonable attorneys' fees incurred in prosecuting this case (Count VII).

The City of Chicago and Lamar now separately seek dismissal of Plaintiffs' FAC.

## DISCUSSION

Defendants have moved to dismiss the FAC for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim under Rule 12(b)(6). The purpose of a motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990), and a Rule 12(b)(1) motion tests subject matter jurisdiction. *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). In reviewing a motion to dismiss under either rule, the court takes as true all factual allegations in the plaintiffs' complaint and draws all reasonable inferences in their favor. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 770 (7th Cir. 2002); *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). A motion to dismiss under Rule 12(b)(6) will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### A.   The City's Motion to Dismiss

The City claims that dismissal is proper because (1) the taking and eminent domain claims are not ripe for review; (2) the zoning ordinance is a reasonable, content-neutral restriction on speech; and (3) the due process claims are not ripe for review, are time-barred, or simply do not state claims for relief. The court addresses each argument in turn.

### 1. Takings and Eminent Domain Claims

Plaintiffs concede that their unlawful takings claim is premature and not properly before this court because their sign is still in place and "no monetary damage has been suffered by Plaintiffs relating to loss of income from the leasing of space for the Painted Sign." (Pl. Response, at 5; City Mem., at 2-4.)[3] Plaintiffs also concede that their eminent domain claim is premature because their right to relief is conditioned upon possible future events; namely, a finding that the zoning ordinance is constitutional and an order directing Plaintiffs to remove the sign. (*Id.*) The City's motion to dismiss Counts V and VI of the FAC is therefore granted, and those counts are dismissed without prejudice.

### 2. First Amendment Claim

Plaintiffs allege that the zoning ordinance is unconstitutional as applied to their sign because it allows advertising signs to remain as legal, non-conforming signs if they predated the 1990 amendments and were erected pursuant to a valid permit, but not if the signs predated the 1990 amendments and were erected without a permit, even if no permit was required at the time. A statute that regulates the time, place, and manner of expression will not offend the First Amendment if it (1) is content-neutral, (2) is narrowly tailored to serve a significant governmental interest, and (3) allows for ample alternative channels for the expression. *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1059 (7th Cir. 2004). If an ordinance is content-neutral and has an incidental impact on expression, courts apply the standard set forth in *United States v. O'Brien*, 391 U.S. 367 (1968), under which the ordinance will be upheld if: (1) the regulation is within the constitutional power of the government; (2) the regulation furthers a substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free

---

[3] Plaintiffs' Response to the City of Chicago's Motion to Dismiss Plaintiffs' Amended Complaint is cited as "Pl. Response, at ___." Defendant City of Chicago's Memorandum in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint is cited as "City Mem., at ___."

expression; and (4) the restriction is no greater than is essential to the furtherance of the governmental interest. *Id.* at 376-77. *See also City of Erie v. Pap's A.M.*, 529 U.S. 277, 296-301 (2000) (plurality opinion); *Hodgkins ex rel. Hodgkins*, 355 F.3d at 1059.

The City claims that its zoning ordinance is content-neutral because it regulates all large, lighted signs, including advertising signs, without reference to the content of the advertisement. As a content-neutral regulation on speech, the City argues, the ordinance is valid as long as it meets the *O'Brien* standards. (City Mem., at 9-10) (citing *City of Erie*, 529 U.S. at 296-301). Plaintiffs disagree, arguing that the ordinance regulates commercial speech by restricting the location of advertising signs:

> No advertising sign having a face which exceeds 100 square feet shall be permitted within 250 feet of a Residence District. No advertising sign shall be permitted within 75 feet of a Residence District.

Code § 17-32-580(7) ("Section 8.9(7)"). In Plaintiffs' view, the court must therefore analyze the ordinance under the standard set forth in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557 (1980), which requires a showing that: (1) the speech concerns lawful activity and is not misleading; (2) the governmental interest is substantial; (3) the regulation directly advances the governmental interest; and (4) the regulation is not more extensive than necessary to advance that interest. *Id.* at 566. (Pl. Response, at 6-7.)

The City notes, in response, that Plaintiffs' First Amendment claim turns not only on Section 8.9(7) of the ordinance, but also on Section 14-40-040, which requires a permit for signs covered by the ordinance; and on Section 6.7-1(a), which affords legal, non-conforming status to certain preexisting signs erected pursuant to a permit.[4] Those sections apply not just to advertising signs,

---

[4] Section 6.7-1(a) states that "[a]ny sign that does not conform to Sections 8.9(5), 8.9(6), 8.9(7), 9.9(5), 9.9(6), 9.9(7), 10.14(5), 10.14(6), or 10.14(7) of this chapter as amended by this ordinance, and that was lawfully erected pursuant to a permit lawfully issued prior to the effective date of this section, may remain in use as a legal non-conforming sign."

(continued...)

6

but to other types of signs as well. (City Reply, at 5) (noting that Section 6.7-1(a) applies to Section 8.9(5), which addresses signs, other than business signs, along major routes.)[5] See also Section 3.2 (defining "Sign" as "a name, identification, description, display, or illustration which is affixed to . . . a building, structure, or piece of land and which directs attention to an object, product, place, activity, person, institution, organization, or business"). The City also contends that advertising signs are regulated differently not because they contain commercial speech but because they are located off-premises from the business advertised. (Id. at 6.) In any event, the City maintains, dismissal is appropriate because "[t]he basis for the claimed irrationality has nothing to do with the content of the Sign, but rather with the City's failure to process a permit so that the new Ordinance (which is otherwise unchallenged) would not apply to the Sign." (City Surresponse, at 6.)[6]

The court agrees. As noted, Plaintiffs claim that the zoning ordinance violates the First Amendment because it allows advertising signs that pre-dated the 1990 amendments and which now violate those amendments to remain only if the signs were initially erected pursuant to a permit, regardless of whether such a permit was even required at the time the sign was erected. Plaintiffs' sign happens to be an advertising sign, but the provisions they really challenge here – the legal, non-conforming use and permit provisions, by which the City only "grandfathers in" those signs that were issued pursuant to a permit – apply to all signs, not just advertising signs. Plaintiffs nowhere argue that the size and distance restrictions on advertising signs found in Section 8.9(7)

---

[4](...continued)
Section 14-40-040 states that "[i]t shall be unlawful to begin the erection, alteration or enlargement of any sign, signboard or structure covered by the provisions of this chapter of the code unless a permit therefore shall have first been obtained from the department of inspectional services . . ."

[5]     Defendant City of Chicago's Reply Memorandum in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint is cited as "City Reply, at __."

[6]     Defendant City of Chicago's Surresponse in Support of its Motion to Dismiss the First Amended Complaint is cited as "City Surresponse, at __."

7

will not pass constitutional muster. Thus, the court agrees with the City that Plaintiffs' challenge is not aimed at the ordinance's regulation of commercial speech.

Moreover, as the court noted in its earlier decision, "Plaintiffs' First Amendment argument is nothing more than a restatement of its arguments that the City's refusal to 'grandfather' Plaintiffs' sign deprives it of due process." *General Auto Service Station*, 2001 WL 558148, at *6. Plaintiffs cannot convert what is essentially a due process claim into one under the First Amendment merely by noting that theirs is an advertising sign. Plaintiffs have not effectively alleged a First Amendment challenge to the zoning ordinance, and the City's motion to dismiss Count I is granted.

### 3. Due Process Claims

The City argues that Plaintiffs' procedural due process claim (Count II) and substantive due process claims (Counts III and IV) must all be dismissed because they are not ripe for a decision, they are barred by the applicable statute of limitations, and they fail to state claims in any event.

#### a. Ripeness

In its opening memorandum, the City claimed that Plaintiffs were attempting to bring "what are essentially takings claims labeled as federal substantive due process or procedural due process claims." (City Mem., at 5) (citing *Forseth v. Village of Sussex*, 199 F.3d 363, 369-70 (7th Cir. 2000)). Relying on this theory, the City argued that Plaintiffs had failed to exhaust their state court remedies as required by *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194-96 (1985). (City Mem., at 5.) As noted, Plaintiffs concede that their takings and eminent domain claims are premature and not properly before this court. (Pl. Response, at 5-6.) In light of this concession, Plaintiffs' due process claims cannot fairly be characterized as takings claims. The City has not otherwise challenged the ripeness of Plaintiffs' due process claims and, in fact, argues that those claims are untimely. The ripeness objection is overruled.

### b. Statute of Limitations

The City next argues that Plaintiffs' due process claims are barred by the applicable statute of limitations. The Supreme Court has directed that the proper statute of limitations for § 1983 claims is the personal injury statute of limitations of the state in which the alleged injury arose. *Hoosier Bancorp of Indiana, Inc. v. Rasmussen*, 90 F.3d 180, 182 (7th Cir. 1996) (citing *Wilson v. Garcia*, 471 U.S. 261, 275, 280 (1985)) ("§ 1983 claims are best characterized as personal injury actions"). "The limitations period for § 1983 cases in Illinois is two years." *Clark v. City of Braidwood*, 318 F.3d 764, 766 (7th Cir. 2003).

The City claims that Count II, which alleges a procedural due process violation based on the City's failure to process Plaintiffs' 1995 permit application, is time-barred because Plaintiffs "became aware of the non-issuance of the permit no later than August 1997, when the second Notice of Violation was issued," but waited more than two years, until January 19, 2000, to file a complaint. (City Mem., at 8.) According to the City, Counts III and IV are similarly untimely because they, too, "are clearly based on the 1995 and 1997 violations." (*Id.*) Count III alleges that the zoning ordinance violates Plaintiffs' due process rights by "prohibiting the Current Sign as it exists." (FAC ¶ 48.) Count IV alleges that the zoning ordinance violates Plaintiffs' due process rights based on the City's retroactive application of the amended permit requirement and the restrictions on the placement of advertising signs. (*Id.* ¶ 49.) In the City's view,

> it is only because the City failed to issue the sign permit applied for by Whiteco in 1995 that plaintiffs can claim that the City violated their "vested property rights" by "retroactively" applying the Ordinances. Similarly, it is only because the City issued the second violation notice in 1997 that plaintiffs can claim that the City is "prohibiting" the Sign; no subsequent enforcement action by the City is alleged.

(City Mem., at 8.)

9

Plaintiffs first respond that their due process claims seek equitable and declaratory relief and, thus, are not subject to the statute of limitations.[7] (Pl. Response, at 12-13.) In support of this argument, Plaintiffs cite *Lavey v. City of Two Rivers*, 994 F. Supp. 1019 (E.D. Wis. 1998). The plaintiffs in *Lavey* brought a facial challenge to a zoning ordinance under the First Amendment, and the city sought summary judgment on statute of limitations grounds. The city relied on *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158 (4th Cir. 1991) for the proposition that the § 1983 claims were time-barred, but the court found that case, which addressed a claim for an unconstitutional taking, inapposite where the plaintiffs sought declaratory and injunctive relief. 994 F. Supp. at 1023. The court also found it significant that the *National Advertising* court considered it "doubtful that an ordinance facially offensive to the First Amendment [could] be insulated from challenge by a statutory limitations period." *Id.* (quoting *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1168 (4th Cir. 1991)). *See also Frye v. City of Kannapolis*, 109 F. Supp. 2d 436, 441 (M.D.N.C. 1999) (in light of *National Advertising*, court declined to apply § 1983 statute of limitations to facial First Amendment challenge to zoning ordinance).

In this case, Plaintiffs do not raise any facial challenges to the zoning ordinance. They correctly note, however, that their sign "remains in place to this day," leaving them "no current legal right to claim damages." (Pl. Surreply, at 5 n.1.)[8] The *Lavey* court assumed that the § 1983 statute of limitations defense was unavailable for claims seeking equitable, as opposed to legal, relief, but did not elaborate on that assumption. Plaintiffs suggest that the rationale is found in *Union Carbide*

---

[7] Plaintiffs do not dispute that their constitutional claims are cognizable only through § 1983. *See, e.g., Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983"); *Flores v. City of Chicago*, 682 F. Supp. 950, 953 (N.D. Ill. 1988) ("Section 1983 provides a cause of action against municipalities . . . and the availability of this statutory remedy precludes direct claims under the Constitution").

[8] Plaintiffs' Surreply in Further Response to Defendant City of Chicago's Motion to Dismiss Plaintiffs' First Amended Complaint is cited as "Pl. Surreply, at ___."

10

*Corp. v. State Board of Tax Comm'rs*, 992 F.2d 119 (7th Cir. 1993), which, they claim, establishes that "statutes of limitation that bar legal actions do not bar equitable actions." (Pl. Response, at 13.) Unlike § 1983, which provides for both legal and equitable relief, however, the Railroad Revitalization and Regulatory Reform Act of 1976 at issue in *Union Carbide* only contemplated equitable relief. 992 F.2d at 123. *Compare Bosco v. Chicago Transit Authority*, 164 F. Supp. 2d 1040, 1050 (N.D. Ill. 2001) ("[m]unicipalities and other local governments may be sued for damages, as well as declaratory and injunctive relief under a Section 1983 theory").

The City's reliance on *Nemkov v. O'Hare Chicago Corp.*, 592 F.2d 351 (7th Cir. 1979) to establish that the statute of limitations applies to claims for equitable relief is equally misplaced. *Nemkov* held that where shareholders could have sought relief at law but chose not to do so, the statute of limitations applied to the equitable claims they did pursue. *Id.* at 355 ("[e]quitable jurisdiction is concurrent even though plaintiff chooses to forego damages and to seek only equitable relief"). *See also Cannon v. University of Health Sciences/The Chicago Medical Sch.*, 710 F.2d 351, 358 (7th Cir. 1983) (quoting *Cope v. Anderson*, 331 U.S. 461, 464 (1947)) ("equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy").

Nevertheless, the Supreme Court has determined that § 1983 claims are best characterized as personal injury actions for statute of limitations purposes, even where such claims contemplate both legal and equitable relief. *Wilson*, 471 U.S. at 278, 280 (§ 1983 derives from the Fourteenth Amendment, which recognizes that no person shall be deprived of life, liberty, or property "without due process"; "[a] violation of that command is an injury to the individual rights of the person"). Plaintiffs have cited no cases that have found a statute of limitations inapplicable where, as here, a plaintiff sought injunctive relief under § 1983 based on an as-applied due process challenge to a zoning ordinance, nor is this court aware of any. Absent such authority, the court proceeds with an analysis of whether Plaintiffs' claims were filed within the limitations period.

11

Plaintiffs insist that their due process claims are timely because they were filed "within two years of the City's final administrative rulings, the true benchmark for calculating any applicable limitations period." (Pl. Surreply, at 5.) As Plaintiffs see it, the final administrative ruling on the 1995 sign permit application was entered on September 14, 1998 when the Zoning Board of Appeals affirmed the decision to deny Plaintiffs a permit. The final administrative ruling on the 1997 zoning ordinance violation notice occurred on October 20, 1998, when a City administrative law officer entered a final judgment, assessed a $250 fine against Whiteco, and ordered the company to remove the sign within 90 days. (*Id.* at 5-6; FAC ¶ 44.) Plaintiffs filed their complaint on January 19, 2000 which, they argue, is well within the two year statute of limitations period on both claims. (*Id.*)

Plaintiffs' only support for this theory is *Draghi v. County of Cook*, 985 F. Supp. 747, 749 (N.D. Ill. 1997), in which a doctor formerly employed at Cook County Hospital filed a § 1983 action challenging his suspension and ultimate discharge. *Id.* at 748. The parties disputed, in part, whether the final adverse decision of the hospital board occurred when the board met and decided to uphold the discharge on April 5, 1995, or six days later, when the board issued its notification of that decision. *Id.* at 749. The notification specifically stated that the termination was "effective immediately," and the court interpreted that language to apply to the date of the notification, not the earlier date when the hospital board voted on the issue. *Id.* at 750. The doctor's lawsuit, filed on April 11, 1997, exactly two years after the April 11, 1995 notification date, was, therefore, timely. *Id.*

Contrary to Plaintiffs' suggestion, the *Draghi* case provides little guidance in resolving the issue currently before this court. It is not clear that the administrative review procedures of a county hospital regarding employee terminations are comparable to those of a city zoning commission assessing permit applications. Nor do the parties in this case dispute the interpretation of a zoning violation notice. In addition, *Draghi* addressed only a substantive, and not a procedural,

12

due process claim, whereas this case involves both. In any event, a limitations period generally begins "when facts exist which authorize one party to maintain an action against another." *Bank of Ravenswood v. City of Chicago*, 307 Ill. App. 3d 161, 167, 717 N.E.2d 478, 483 (1st Dist. 1999). Thus, "a plaintiff's cause of action accrues at the time its interest is invaded; the mere fact that the extent of its damages is not immediately ascertainable does not postpone the accrual of a plaintiff's claim." *Id.*

The procedural due process claim in Count II of Plaintiffs' FAC arises from the City's failure to process a sign permit in 1995. Plaintiffs certainly knew by August 1997, when Whiteco received another notice of violation, that the City had not processed that permit application. Plaintiffs suggest that the limitations period was tolled during the pendency of the City's enforcement action against Whiteco, which arose from the denial of Whiteco's permit request in 1997. The court disagrees. What happened before the Zoning Board of Appeals with respect to the 1997 permit application, and during the subsequent enforcement action against Whiteco, did not affect Plaintiffs' right to challenge the procedural failure to process the earlier permit request in 1995. Nor can Plaintiffs characterize the failure to process the 1995 permit as a continuing violation; a continuing violation is occasioned by continuing unlawful *acts and conduct*, not by continual *ill effects* from an initial violation. *Hyon Waste Mgmt. Servs., Inc. v. City of Chicago*, 214 Ill. App. 3d 757, 574 N.E.2d 129, 132 (1st Dist. 1991). Thus, Plaintiffs' procedural due process claim is barred by the statute of limitations and is dismissed.

The substantive due process claims challenge the zoning ordinance because it prohibits Plaintiffs' sign in its current location and infringes vested property and contractual rights. As noted, Plaintiffs argue that there were no final adverse rulings on these claims until (1) September 14, 1998, when the Zoning Board of Appeals denied the 1997 permit request; and (2) October 20, 1998 when an administrative law officer entered final judgment on the ZBA's decision, assessed a $250 fine, and ordered Whiteco to remove the sign within 90 days. The City insists that both claims are

inextricably tied to incidents in 1995 and 1997: the City only violated Plaintiffs' "vested property rights" by failing to issue the sign permit in 1995; the City is only prohibiting Plaintiffs' sign right now by virtue of the 1997 violation notice.

The court is less certain. As this court understands this claim, Plaintiffs assert a vested right to keep their sign in its current location not just because the City failed to process the 1995 permit application, but also because they should not need a permit at all given that the sign was lawfully erected without a permit before the amendments went into effect. The City raised the violation issue with Whiteco twice – once in 1994, and again in August 1997. In response to the 1994 violation notice, Whiteco applied for a permit; the City never granted one, but it also never took further action to enforce the zoning ordinance. As a result, the second violation notice in 1997 arguably did not put Plaintiffs on notice that the City intended to enforce the zoning ordinance in an allegedly unfair manner. In fact, the first time the City actually did enforce a violation notice to Plaintiffs' detriment was either on April 21, 1998, when the Zoning Administrator denied Whiteco's permit application, or on October 20, 1998, when an administrative law officer assessed the $250 fine. Similarly, Plaintiffs did not learn that the City was allegedly wrongfully prohibiting their sign until it denied Whiteco's permit application on April 21, 1998. (FAC ¶ 48) (citing permit provision of Section 14-40-040.) As noted, Plaintiffs filed their substantive due process claims on January 19, 2000, which is less than two years after April 21, 1998. The City's motion to dismiss Counts III and IV pursuant to the statute of limitations is denied.

### c. Failure to State a Claim

The City's final objection to Plaintiffs' FAC is that it fails to state substantive due process claims. "[W]hen a plaintiff's substantive due process claim is predicated on the deprivation of a state created property interest, the plaintiff must show (1) that the state actor's conduct was arbitrary and irrational, and (2) that the state actor committed a separate constitutional violation *or*

that state law remedies are inadequate." *Galdikas v. Fagan*, 342 F.3d 684, 691 (7th Cir. 2003). The City claims that Plaintiffs cannot satisfy the second requirement – i.e., that the City committed a separate constitutional violation or, in the alternative, that Plaintiffs' state law remedies are inadequate. (City Mem., at 6.)

Plaintiffs first argue that they have alleged a separate constitutional violation under the First Amendment. (Pl. Response, at 10.) The court has already determined, however, that Plaintiffs' First Amendment challenge to the City's content-neutral zoning ordinance, which is really just a restatement of their due process claims, cannot withstand the City's motion to dismiss. Plaintiffs also argue that their state law remedies are inadequate because "an exception to any exhaustion requirement would apply 'based on the futility of seeking state court relief.'" (*Id.* at 11) (quoting *Daniels v. Area Plan Comm'n of Allen County*, 306 F.3d 445, 456 (7th Cir. 2002)). The *Daniels* case involved a takings claim, not a substantive due process claim, and it addressed the exhaustion requirement of *Williamson County*, not the requirement that state law remedies be inadequate. As noted earlier, both parties concede that Plaintiffs' takings claims are not properly before this court and that *Williamson County* does not apply.

Plaintiffs insist that the City is nonetheless estopped to argue that Plaintiffs' state law remedies are adequate because Plaintiffs were rebuffed when they tried to intervene in Whiteco's state court lawsuit. (Pl. Surreply, at 5.) Plaintiffs rely on language in the Seventh Circuit's decision in this case regarding the appropriateness of abstention. In determining that it was improper for the court to abstain from hearing this case, the Seventh Circuit stated that General Auto did not have an adequate opportunity to present its constitutional arguments in state court because "no state forum was available." *General Auto Service Station*, 319 F.3d at 905. As the court explained:

> General Auto *tried* to litigate in state court – and was rebuffed. It sought to intervene in Whiteco's suit, a sensible step that would have enabled the state judiciary to resolve all theories affecting all parties at one go. Yet Chicago opposed its motion to intervene, and the state court denied the motion.

15

* * * * *

> Having persuaded the state court that General Auto was not entitled to adjudication of its constitutional theories, Chicago is estopped to argue in federal court that General Auto could have litigated in state court if only it had tried harder.

*Id.* (emphasis in original).

The City disputes that it opposed Plaintiffs' motion to intervene, arguing that the City's appellate attorney misspoke on that point during oral argument. (City Reply, at 3.) Regardless, the City contends that when the Seventh Circuit said that General Auto had no available state forum, the court meant General Auto could not mount any constitutional defenses in an enforcement proceeding because it had not been fined by the City, and because it was not allowed to intervene in Whiteco's case. (City Surresponse, at 2 n.3.) See also *General Auto Service Station*, 319 F.3d at 905. The City notes that in denying Plaintiffs' motion for leave to intervene in Whiteco's enforcement proceeding, the state court remarked that the decision "in no way reflects upon your ability to consolidate any other pending declaratory action. But you're not a party to the administrative review." (City Reply, at 3) (quoting Report of Proceedings on Dec. 29, 1999 in Case No. 98 CH 14280, at 5.) In the City's view, Plaintiffs can challenge the City's application of the zoning ordinance to their sign "on state-law due process grounds." (*Id.*, at 10; FAC ¶¶ 46-49.)

State law remedies are not inadequate where a plaintiff had an opportunity to challenge a zoning decision in state court. In *Centres, Inc. v. Town of Brookfield*, 148 F.3d 699 (7th Cir. 1998), for example, the plaintiff claimed that the town violated its substantive due process rights by denying a building permit. *Id.* at 704. The court dismissed the claim, finding that the plaintiff could not allege its state law remedies were inadequate: "the state court addressed directly the gravamen of Centres' complaint and held that the defendants' decision was neither arbitrary nor unreasonable." *Id.* In this case, the Seventh Circuit has made it clear that Plaintiffs did not have an opportunity to object to the permit denial or to raise their constitutional defenses in Whiteco's

16

state court proceeding. *See General Auto Service Station*, 319 F.3d at 705. Thus, Plaintiffs' state law remedies were not adequate in that regard.

The only other state law remedies identified by the City are Plaintiffs' challenges under the Illinois Constitution. The City has not, however, cited any case in which a court found adequate state law remedies in the state constitution, or required a plaintiff to pursue state substantive constitutional claims before redressing federal ones. *Compare Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) ("far from alleging the inadequacy of state-law remedies, Lee has asserted pendant state-law claims for bailment, trespass, and wrongful conversion"). Plaintiffs have sufficiently alleged that their state law remedies are inadequate and the City's motion to dismiss the substantive due process claims is denied.

## B.   Lamar's Motion to Dismiss

Chancellor Media Corporation ("Chancellor") purchased Whiteco Industries sometime between 1997 and August 1999. In August 1999, Plaintiff F.A.Y. Properties leased the wall space at 1127-33 North State Street to Chancellor, doing business as "Chancellor Media Whiteco Outdoor Corporation ("Whiteco"). (FAC ¶ 24.) Defendant Lamar is the successor in interest to Whiteco. Plaintiffs have sued Lamar for indemnification of the attorneys' fees Plaintiffs have incurred in prosecuting this case, relying on an indemnification provision in the parties' Sign Location Lease (the "Lease"). In its motion to dismiss, Lamar contends that the court lacks subject matter jurisdiction over Plaintiffs' state law breach of contract claim; this litigation does not arise out of the lease agreement as required to state a breach of contract claim; and Lamar is not a proper nominal defendant.

The parties agree that Plaintiffs can only maintain their breach of contract claim in this federal case if the court has supplemental jurisdiction over the claim. (Lamar Mem., at 4; Pl. Response, at 1.) A federal court has jurisdiction to hear "all claims sufficiently related to the claim

17

on which its original jurisdiction is based to be part of the same case or controversy within the meaning of Article III of the Constitution." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1181 (7th Cir. 1993). *See also* 28 U.S.C. § 1367. Claims are sufficiently related if they "'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case.'" *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164-65 (1997) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)).

Lamar argues that the constitutional claims against the City of Chicago and the breach of contract claim against Lamar have no relation to each other. The constitutional claims involve amendments to the City's zoning ordinance and the manner in which they were applied to Plaintiffs' advertising sign. The breach of contract claim relates to the negotiation and execution of the Lease and whether Lamar has an obligation to indemnify Plaintiffs under its terms. (Lamar Mem., at 5.) Plaintiffs respond that the claims are related because "[t]he only reason such prosecution became necessary was because of the Lease for the Painted Sign and Whiteco's (Lamar's) involvement and incompetent handling of the related administrative and state court litigation regarding the sign." (Pl. Response, at 3.) Plaintiffs find it significant that the original complaint, the FAC, and the Seventh Circuit's earlier decision in this case all discuss Whiteco's involvement "in great detail." (*Id.*)

It is true that Whiteco's actions provide factual background for Plaintiffs' constitutional claims against the City, and Plaintiffs may be correct that Whiteco did not competently prosecute the administrative and state court cases. *See General Auto Service Station*, 319 F.3d at 906-07 ("Whiteco did not prosecute even the state-law theories competently"). Those facts, however, are unrelated to whether the City violated Plaintiffs' due process rights which, in turn, is unrelated to whether Lamar breached its contractual obligations to indemnify Plaintiffs for this lawsuit. The constitutional claims will be wholly unaffected if the contract claim is dismissed, and the contract

18

claim can be resolved regardless of whether the City is found to have violated Plaintiffs' constitutional rights. See, e.g., Eager v. Commonwealth Edison Co., 187 F. Supp. 2d 1033, 1040 (N.D. Ill. 2002) (in Title VII case, court did not have supplemental jurisdiction over employee's electrocution claims, even though electrocution was caused by exhaustion on the job, where there was no evidence the employer required excessive hours of work as a form of sexual discrimination, and the Title VII claims "would be unaffected if the electrocution claims were dismissed"). Lamar's motion to dismiss for lack of subject matter jurisdiction is therefore granted. See Van Harken v. City of Chicago; 103 F.3d 1346, 1354 (7th Cir. 1997) ("we acknowledge the broad discretion of district judges in making judgments concerning the retention of supplemental claims").

## CONCLUSION

For the reasons stated above, the City of Chicago's Motion to Dismiss (Docket No. 68-1) is granted in part and denied in part, and Lamar Advertising Company's Motion to Dismiss (Docket No. 73-1) is granted. Counts I, II, V, VI, and VII of the FAC are dismissed. Defendant Lamar is dismissed from this case without prejudice to a state court action on Plaintiffs' claims against Lamar.

ENTER:

Dated: March 9, 2004

REBECCA R. PALLMEYER
United States District Judge